CITY OF NEW BEDFORD *vs.* COUNTY COMMISSIONERS OF
BRISTOL.

The board of aldermen of a city laid out and accepted a public highway, awarded damages
to landowners, and fixed a time for them to remove buildings. A landowner appealed
from the award of the board of aldermen to the county commissioners, and obtained a
new award of damages from a jury, whose verdict was accepted by the court of common
pleas. The order for the removal of buildings had been previously revoked and due no-
tice given, and the order accepting the street was afterwards also revoked, before any
entry was made upon the land or possession thereof taken for the purpose of constructing
the highway. *Held,* that under *Sts.* 1842, *c.* 86, and 1847, *c.* 259, the landowner was not
entitled to a warrant of distress for the damages given by the jury, and that the order
of the county commissioners issuing the warrant would be quashed on certiorari.

PETITION for a writ of certiorari to quash the proceedings of
the respondents, assessing damages to Elias Sampson, Jr., against
the petitioners, for land taken for a street in New Bedford ; and
for an injunction to restrain the respondents from issuing a war-
rant of distress for such damages. The case was thus :

The street was laid out on the 28th of May 1856, and on the
16th of June accepted by the city as a public highway, and
damages assessed to Sampson and other owners of lands over
which it was laid. On the 25th of August the board of alder-
men passed an order that the city clerk be directed to notify the
owners of buildings on the street to remove them before the 1st
of March 1857. Sampson appealed from the award of dam-
ages to the county commissioners, and at their regular meeting
in September 1856 applied for a jury, and afterwards obtained
a verdict for fifteen thousand dollars, which was returned to and
accepted by the court of common pleas at December term 1856.
On the 9th of December, before the return of the verdict, the
board of aldermen revoked their order of August 25th for the
removal of buildings, and directed the city clerk to notify its
revocation to all persons upon whom it had been served ; and on
the 13th of January 1857 passed an order revoking their order
of the 16th of June accepting this street as a public highway,
and directed the city clerk to notify the abutters on the street

thereof. Both of these orders were notified to Sampson. The orders are fully set forth in the opinion of the court. On the 24th of March 1857 the respondents issued a warrant of distress against the City of New Bedford for the amount of the verdict and costs. The land was never actually entered upon or taken possession of for the purpose of constructing the street. Upon the filing of the petition a temporary injunction was granted.

*T. D. Eliot & W. W. Crapo*, for the petitioners.

*J. H. Clifford & O. Prescott*, for the respondents.

DEWEY, J. Upon the question whether the county commissioners have authority, in cases like the present, to issue a warrant of distress, we have not found it necessary to decide. If the question were whether in cases originating before them, upon petitions for locating highways, they might properly issue warrants when the town was by law required to pay damages, we should suppose that there could be no doubt. The *St.* of 1786, *c.* 67, § 6, gave to the court of sessions, who had at that time the jurisdiction now exercised by county commissioners, the authority to issue warrants of distress. In *Gedney* v. *Tewksbury*, 3 Mass. 307, it was held by this court, that this was the only remedy to enforce payment of land damages in case of public highways. By the *St.* of 1827, *c.* 77, § 4, county commissioners were vested with the same powers that had been exercised by the court of sessions, or by the commissioners of highways, a tribunal that succeeded by *St.* 1825, *c.* 171, to the powers of the court of sessions in the matter of establishing ways. The like power was further continued by the Rev. Sts. *c.* 14, § 16. The authority of county commissioners to issue warrants of distress seems to be distinctly recognized in the provisions of the *St.* of 1849, *c.* 124, requiring interest to be added in such cases to the award of the commissioners.

The only question that can exist upon this point is whether this power to issue warrants of distress is not confined to cases of highways originally cognizable by them, and excluding town ways brought before them as an appellate court; and whether the authority exercised by the city council of New Bedford under § 12 of *St.* 1847, *c.* 60, (the city charter) is any other au-

thority than that which attaches to selectmen as to the laying out of town ways.

Without expressing any decided opinion upon the point whether a warrant of distress is the proper remedy to be resorted to with a view of enforcing the payment by the city of New Bedford of land damages awarded by a jury on an appeal from the city council to the county commissioners, and assuming that such authority may exist, the further inquiry is whether, upon the particular facts existing in the present case, such warrant of distress may properly be used to enforce payment of the damages awarded by the jury, or whether the party thus claiming damages should be restrained from enforcing such warrant. Independently of the Sts. of 1842, c. 86, and 1847, c. 259, the proceedings of the city council and the further action on the appeal to the county commissioners and the assessment of damages by the jury, as found by the case, would have vested the right to such damages in Sampson absolutely, and a subsequent discontinuance of the highway before the road was constructed would not defeat that right. Such was the rule of law as directly settled by this court in *Harrington* v. *County Commissioners*, 22 Pick. 266.

The apparent unreasonableness of payment of the whole value of the land, thus proposed to be converted into a public highway, but which was not in fact taken, and the want of a statute provision by which in such case the landowner could be indemnified for his actual injury, led to the passage of the *St.* of 1842, c. 86, by which it was provided that " the county commissioners shall not order the damages to be paid, nor shall any person claiming damages have a right to demand the same, until the land shall have been entered upon and possession taken for the purpose of constructing said highway or alteration." This statute being obviously applicable only to highways originally laid out by county commissioners, an additional act was passed applying the same provisions to town ways, and imposing the like restraints and duties upon selectmen. *St.* 1847, c. 259. The effect of these two statutes is to place on the same footing in this respect town ways and public highways, and thus render it

immaterial to the question we are now considering, whether the location by the city council is to be treated as a location of a town way or a public highway.

Has the land of Sampson "been entered upon and possession taken for the purpose of constructing a way thereon"? If it has, then the landowner has a vested right to his damages, and the city of New Bedford is bound to pay the same. On the other hand, if the proceedings on the part of the city council have not gone to that extent, then he has no claim for the damages assessed by the jury, but must be content to receive what the law has allowed to him in such case, an adequate remuneration for any injuries and expense he may have sustained by such initiatory proceedings.

The location of the road by the city council, and the assessment of damages by a jury and acceptance of their verdict, were not sufficient to give a vested right to Sampson to recover such damages. The road was not in fact constructed, nor the land in fact entered upon for the purpose of opening the street. Independently of a single act, that of the order of the board of aldermen of August 25th 1856, directing the city clerk " to notify the owners of the buildings on that portion of Ray Street between Union and Williams Street to have all the buildings, except those fronting upon Union Street, removed before the 1st of March 1857, and that the buildings fronting on Union Street be removed from the street on or before the 1st of May 1857," there is nothing to sustain the right to these damages. We do not understand that this order had been acted upon by Sampson, or any buildings removed by him in pursuance of it. This order was a very significant act on the part of the city authorities of their purpose to open this road, but not more so perhaps than the earlier act laying out the same with all the formalities of law. But this order was revoked by the board of aldermen on the 9th of December 1856, and "the city clerk directed to notify all persons upon whom that order was served, that the same has been revoked, and that no action on their part is required without further notice."

On the 13th of January 1857, the city council passed a fur-

ther order revoking the order of the 16th of June 1857 laying out this street, and the city clerk was directed to notify the abutters on said street of the same. It is objected to this vote of January 13th 1857, that it cannot be considered as a legal discontinuance of a road already established. This may be so; but it is to be borne in mind that the right of the landowner to recover his damages does not depend upon the question of an existing actual location and establishment of a way over his land, but whether " the land has been entered upon and possession taken."

The vote of the city council, taken in connection with the order of the board of aldermen of December 9th 1856, furnished competent and proper evidence at least that the city authorities did not intend to enter upon the land and construct the road. These proceedings would seem amply sufficient notice of that purpose, and would also lay the foundation of a claim for damages for any expenses and trouble occasioned by these proceedings, which were now proposed to be abandoned.

Upon the case stated, the court are of opinion that the petition presents a proper case for granting a writ of certiorari as prayed for, and that the injunction heretofore granted, restraining the party and all officers from attempting to enforce or collect said warrant, be continued until the further order of this court.